23-04400MB

## AFFIDAVIT OF BORDER PATROL AGENT VINCENT GONZALEZ

Your affiant, Vincent Gonzalez, a Border Patrol Agent of the United States Border Patrol, being duly sworn, does depose and state the following:

### **INTRODUCTION AND AGENT BACKGROUND**

1.      I submit this affidavit in support of an Application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the contents of electronic communication devices capable of accessing the internet, defined below as Target Device 1 (TD-1).

2.      I am a Border Patrol Agent (BPA) with the United States Border Patrol ("USBP") permanently assigned to the Nogales Border Patrol Station in Nogales, Arizona, and detailed to Tucson Sector Prosecutions Unit in Tucson, Arizona.  I have been an agent with the USBP since April 2007. I completed the USBP Academy in August 2007, where I received instruction in constitutional law, immigration law, criminal law, and federal and civil statutes. I have also received instruction in the detection, interdiction, and arrest of narcotics smugglers, alien smugglers, and aliens illegally present in the United States.

3.      I previously served as Acting Supervisory Border Patrol Agent for Processing Operations. I was also previously detailed to the Rio Grande Valley Coordination Center where I also assisted in processing operations. While not on detail, I am assigned to patrol agent duties and responsibilities in the Nogales Area of Operations ("AOR"). I have been involved in many apprehensions of undocumented aliens and narcotics smugglers.

4.      In November 2020, I began my detail at Tucson Sector Prosecution Unit as a case agent. As a case agent, I have conducted investigations involving alien smuggling. I have taken sworn statements from material witnesses and suspects. I routinely perform record checks through various law enforcement databases to establish accuracy of information as well as to gather facts relevant to cases. I have acted as a liaison between the United States Attorney's Office and field agents, and I have assisted fellow agents in the development of their cases.

5.     The statements contained in this affidavit are based on information provided by fellow BPAs and based on my experience as a BPA. Since this affidavit is submitted for the limited purpose of securing a search warrant, I have not included all facts known to me regarding this investigation. This affidavit is intended to show only that there exists sufficient probable cause for the requested warrant and does not portray all my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

6) The property to be searched consists of one (1) cellular phone. The cellular phone to be examined is a Blue Motorola cell phone. The cellular phone has been identified as the property of SANCHEZ, Gilbert Alfredo.  The phone is referred to as the Target Phone. The Target Phone is secured inside the Tucson Sector Seized Property Vault in Tucson, Arizona. The Target Phone is sealed in a Department of Homeland Security evidence bag with a signed Form 6051S Custody Receipt for Seized Property and Evidence.

7) The requested warrant would authorize the forensic examination of the Target Phone for the purpose of identifying electronically stored data to include: any telephone numbers, including but not limited to numbers called, numbers stored for speed dial, pager numbers, names and addresses, electronically stored voice and text messages, calling card numbers, text messages, photos, videos and/or identifying information that may be stored in the memory of the Target Phone, for item described in Attachment A (incorporated herein by reference).

## PROBABLE CAUSE

8) On February 26, 2023, at approximately 2:15 p.m., a Border Patrol Agent assigned to the Sonoita, AZ Border Patrol Station Area of Responsibility received information from the Tactical Operations Center (TOC).   The TOC observed 20 subjects walking North near an area known as

Acorn Wash just south of Forrest Service Road (FSR) 61.  The TOC advised that they had temporarily lost visual of the group as they dropped down into a canyon.  This area in which the TOC lost visual is frequently used by both illegal aliens and smugglers.  It was at this time that the TOC observed several vehicles traveling southbound towards the area in question.

9) A white Chevrolet Tahoe was seen going into Acorn and turning back around a short time later.  At approximately 4:00 p.m. Sonoita Border Patrol Agents encountered the vehicle northbound on State Route (SR) 83.  Record checks revealed that the Tahoe was registered to an owner in Marana, Arizona. It was then confirmed to be the same Tahoe the TOC had visual of. As the BPA continued to follow the Tahoe on SR 83, he observed the silhouette of a head popping up and disappearing each time the Tahoe traveled over a pothole in the road.

10) An immigration stop was conducted, the Border Patrol Agent's then made contact with the driver, later identified as Gilbert Alfredo SANCHEZ a United States citizen. The front seat passenger was questioned as to his citizenship, to which he initially responded yes. When the Border Patrol Agents asked him again the passenger responded Mexico. The four back seat passengers were questioned regarding their citizenship which all four replied Mexico, and all five were determined to be illegally present after an immigration inspection.

11) Subsequent to the arrest of SANCHEZ, a blue phone was discovered. The phone was identified as belonging to SANCHEZ.

12) SANCHEZ was transported to the Sonoita Border Patrol Station for further processing. At the Sonoita Border Patrol Station SANCHEZ was interviewed as to his role in the smuggling

attempt. During this interview SANCHEZ explained that he communicated with an individual named 'J' via WhatsApp. This individual named 'J' offered SANCHEZ a job transporting undocumented noncitizens.  On the day of the instant offense, SANCHEZ explained that J provided him with the location location of the pickup spot via a Pindrop within the WhatsApp application.

13) SANCHEZ explained that he expected to be paid between $800 to $1000 per person transported Phoenix.

14) In my experience as a BPA, I have learned that people involved in human smuggling activities will have to "check-in" with co-conspirators during their travels. Additionally, human smugglers will often receive instructions as to load up locations, and routes of travel to take before delivering the illegal aliens to a designated location. These instructions often occur through text messages, or social media messaging applications. The load drivers will also receive instructions that include maps, and pin drops to ensure they follow the prescribed routes.

15) Based on all these facts, I believe that the Target Phone seized during the arrest of Gilbert Alfredo SANCHEZ was used to communicate with human smugglers, scouts in the area, as well as with other human smugglers known and unknown in order to facilitate the crime of smuggling the humans into the United States.

16) Since the date of the arrest, the Target Phone has been in storage at the location described in paragraph 6 (six). The Target Phone has been stored in such a manner that the contents, to the best of my knowledge, are in substantially the same state as when it first came into possession of the USBP.

## TECHNICAL TERMS

17)     Wireless telephone: A wireless telephone (or mobile telephone or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments and other information on personal calendars; and accessing and downloading information from the Internet.   Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

18) Digital camera: A digital camera is a camera that records pictures and video as digital picture files, rather than by using photographic films. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos. Most cell phones currently manufactured contain digital cameras as a standard feature.

19) Portable media player. A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video or photographic files. However, a portable media player can also store other digital data. Some portable media

players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock or games. Most cell phones currently manufactured contain portable medial players as a standard feature.

20) Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state. Most cell phones currently manufactured allow the use of the Internet as a standard feature. Further, most current cell phones allow the user to transmit electronic messages via standard email services or specially designed communication applications between parties.

21) Based on my training, experience, research, and from consulting the manufacturer's advertisements and product technical specifications available online for these types of cellular phones, and based upon my discussions with experts, I know that the cellular phones which are the subject of this search warrant application most likely have capabilities that allow them to also serve as a radio communication transmitter, wireless telephone, GPS device, wireless internet connectivity, and text message capabilities, as these are generally standard features. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device; evidence of where such persons were when they possessed or used the device; evidence of who such persons were with when they possessed or used the device; evidence of persons with whom they communicated when

they possessed or used the device; evidence of text, email, other electronic messaging applications and voice mail communications between the person who possessed or used the device and others. Navigational coordinates may also be transmitted to and/or from these devices to determine the user's location through a GPS application.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22) Based on my knowledge, training and experience, I know that electronic devices such as the Target Phone in this case, can store information for long periods of time. Similarly, things that have been viewed via or uploaded to the Internet are typically stored for some period on the device. Additionally, computer files or remnants of such files can be recovered even if they have been deleted. This is because when a person "deletes" the information on an electronic device, the data does not actually disappear, rather, the data remains on the storage medium until it is overwritten by new data. Information described in this affidavit can often be recovered by forensic computer experts using forensic tools and software.

23) As further described in this affidavit and Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Target Phone was used, where it was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be on the Target Phone is more fully set forth in the factual section contained herein and because:

A. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file, including frequency channels, text messages, video, or photographs.

B.  Forensic evidence on a device can also indicate who has used or controlled the devices. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

C.  A person with appropriate familiarity of how an electronic device works may, after examining the forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

D.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

E.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, when and where, sometimes it is necessary to establish that a particular thing is not present on a storage medium, for example, the absence of the entry of a name in a contact list as evidence that the user(s) of the Target Phones did not have a relationship with the party.

## CONCLUSION

24) Based on the foregoing information, there is probable cause to believe that Gilbert Alfredo SANCHEZ has stored on this Target Phone, evidence related to the smuggling of humans and associated scouting activities within the United States.  The examination of the Target Phone may require authorities to employ techniques, including but not limited to computer-assisted scans of

23-04400MB

the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant. Because this warrant only seeks permission to examine devices already in the possession of the Border Patrol, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night. The Target Phone has been properly stored at the Tucson Sector Seized Property vault and is being transferred to the Tucson Sector Prosecutions Office. Due to the nature of such cell phones, data contained within will remain uncorrupted when being stored for an extended period. Therefore, I request that a warrant be issued, allowing for the search of the Target Phone, as described above.

Vincent Gonzalez

Vincent Gonzalez, Border Patrol Agent
United States Border Patrol

Subscribed and sworn to before
me this 25th day of April 2023:

United States Magistrate Judge
District of Arizona